# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DENNIS S. JAMES**　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　**NO. 16-470-EWD**

**CAROLYN W. COLVIN, ACTING**　　　　　**CONSENT CASE**
**COMMISSIONER OF SOCIAL SECURITY**

---

## RULING and ORDER[1]

Plaintiff Dennis S. James ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, acting Commissioner of Social Security (the "Commissioner"), denying his Title II application for disability insurance benefits and his Title XVI application for supplemental security income. The parties here consented to proceed before a United States Magistrate Judge[2] and the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).[3] For the reasons assigned below, the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED WITH PREJUDICE**.

### I. Procedural Background

On October 3, 2011, Plaintiff protectively filed applications for disability insurance benefits under Title II and supplemental security income under Title XVI, alleging disability beginning September 18, 2010.[4] The claims were initially denied on February 15, 2012[5] and

---

[1] References to documents filed in this case are designated by "R. Doc. at [page numbers]." References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."
[2] R. Doc. 9.
[3] R. Doc. 10.
[4] AR pp. 283-92.
[5] AR pp. 111-34.

Plaintiff filed a request for a hearing on March 14, 2012.[6]  A hearing was held on October 17, 2012, at which Plaintiff, represented by counsel, appeared and testified.[7]  A vocational expert, Patricia Knight, also appeared and testified.[8]  An unfavorable decision was rendered by the Administrative Law Judge ("ALJ") on October 25, 2012.[9]

On November 20, 2012, Plaintiff appealed the ALJ's decision.[10]  On January 30, 2014, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") granted Plaintiff's request for review under the substantial evidence provision of the Social Security Administration ("SSA") regulations (20 CFR 404.970 and 416.1470).[11]  The Appeals Council vacated the ALJ's October 25, 2012 decision and remanded the case back to an ALJ for further proceedings.  In its remand order, the Appeals Council stated that it was not able to completely review this matter due to an incomplete paragraph that mentioned Plaintiff's pre-hearing memorandum dated October 11, 2012.[12]  The Appeals Council also directed the ALJ on remand to offer Plaintiff an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.[13]

Accordingly, on February 5, 2014, Plaintiff was informed of his opportunity for a new hearing.[14]  A hearing was originally scheduled for August 1, 2014,[15] but was subsequently rescheduled for November 6, 2014.[16]  Plaintiff failed to appear at the scheduled hearing on November 6, 2014, but Plaintiff's counsel was present.[17]  In response to a Request to Show Cause

---

[6] AR pp. 161-62.
[7] AR pp. 66-91.
[8] AR pp. 85-89.
[9] AR pp. 135-50.
[10] AR p. 205.
[11] AR pp. 151-54.
[12] AR p. 152 (*citing* AR pp. 366-69).
[13] AR p. 152.
[14] AR pp. 206-07.
[15] AR pp. 215-16.
[16] AR pp. 221-27, 242-43.
[17] AR pp. 92-96.

for Failure to Appear,[18] Plaintiff's counsel reported that Plaintiff was homeless and his hearing notice and other possessions had been stolen.[19] On May 22, 2015, a video hearing was held before an ALJ, at which Plaintiff, represented by counsel, appeared and testified.[20] A vocational expert, Elizabeth Wheeler, also appeared and testified.[21] An unfavorable decision was rendered by the ALJ on September 25, 2015.[22] On November 17, 2015, Plaintiff appealed the ALJ's September 25, 2015 decision.[23] On February 11, 2016, the Appeals Council denied Plaintiff's request for review.[24]

On April 11, 2016, Plaintiff requested a 60-day extension of time to seek judicial review of the February 11, 2016 decision of the Appeals Council.[25] On June 20, 2016, the Appeals Council granted Plaintiff a 30-day extension in which to seek judicial review. On July 15, 2016, Plaintiff, timely filed a Complaint in this Court.[26] Accordingly, Plaintiff exhausted his administrative remedies with regard to his applications before seeking judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *See,* 20 C.F.R. § 404.981.

## II. Standard of Review

This Court's review of the Commissioner's decision denying disability benefits is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Myers v. Apfel*, 238 F.3d 617, 619

---

[18] AR pp. 250-51.
[19] AR p. 252.
[20] AR pp. 26-65.
[21] AR pp. 46-65.
[22] AR pp. 7-25.
[23] AR pp. 109-110.
[24] AR pp. 1-6.
[25] AR pp. 98-99.
[26] R. Doc. 1.

(5th Cir. 2001).  If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.  *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422; *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley*, 809 F.2d at 1057 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  However, the substantial evidence test requires more than a search of the record for evidence supporting the ALJ's findings and must take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Burkhardt v. Commissioner of Soc. Sec. Admin.*, Civ. A. No. 3:08-CV-02032-B (BH), 2009 WL

3849617, at *8 (N.D. Tex. Nov. 16, 2009) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)).

### III. The ALJ's Disability Determination

A social security disability claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505, 416.905. In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See,* 20 C.F.R. § 404.1520(a)(4). Using the five-step evaluation process, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. At step five, the Commissioner must prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from September 18, 2010, the alleged date of disability, through September 25, 2015, the date of the ALJ's decision.[27]   At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 18, 2010.[28]   At the second step, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), degenerative changes of right ankle, degenerative disc disease and diminished visual acuity.[29]   At step three of the analysis, however, the ALJ found that Plaintiff's impairments did not meet or medically equal the required criteria for any listed impairment.   The ALJ explained that Plaintiff's impairments do not singularly or in combination meet or medically equal the required criteria for and of any listed impairment, including impairments listed under section 1.01, Category of Impairments, Musculoskeletal, specifically Listings 1.02 Major dysfunction of a joint(s) and 1.04 Disorders of the spine; section 2.01 Category of Impairments, Special Senses and Speech, specifically Listing 2.02 Loss of visual acuity; and section 3.01, Category of Impairments, Respiratory System, specifically Listing 3.02 Chronic pulmonary insufficiency.[30]

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following nonexertional limitations:

> frequent balancing and kneeling, occasional climbing of ramps and stairs, stooping and crawling, no climbing of ladders, ropes, or scaffolds, the claimant must be allowed the use of a cane for ambulation and to elevate right leg on foot stool when seated, avoidance of concentrated exposure to pulmonary irritants and all exposure to hazards such as moving machinery and unprotected heights, and no jobs requiring very fine vision or prolonged visual

---

[27] AR pp. 11, 20.
[28] AR p. 13.  The ALJ also found that for purposes of his application for disability insurance benefits, Plaintiff met the insured status requirements through June 30, 2012.  *Id.*
[29] AR p. 13.
[30] AR p. 15.

work.[31]

The ALJ further found that Plaintiff "has severe impairments that could reasonably be expected to produce some of the symptoms he alleges and which would affect his ability to perform work related activities. However, the undersigned cannot find the claimant's allegations that he is incapable of all work activity to be credible."[32] Based on the foregoing RFC determination, the ALJ concluded that Plaintiff was unable to perform any past relevant work at step four of the analysis.[33] Proceeding to the fifth step of the analysis, the ALJ found that based on the testimony of a vocational expert, as well as Plaintiff's age, education, work experience and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.[34] The vocational expert testified that someone with Plaintiff's age, education, work experience and RFC would be able to work as a hand packager, general clerk, and information clerk, and that each occupation has a large number of jobs available in both the local and national economy.[35] As such, the ALJ concluded that Plaintiff was not disabled from September 18, 2010, the alleged onset date, through September 25, 2015, the date of the ALJ's decision.[36]

## IV. Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ committed the following errors that require reversal of the ALJ's decision: (1) the ALJ erred by failing to include any limitations in the RFC determination regarding Plaintiff's "lifelong learning disorder and cognitive deficits;" (2) the ALJ erred by failing

---

[31] AR p. 15.

[32] AR p. 17.

[33] AR p. 19.

[34] AR pp. 19-20.

[35] AR p. 20.

[36] AR p. 20. With respect to Plaintiff's application for disability insurance benefits, the ALJ concluded that Plaintiff was not disabled through June 30, 2012, the date of last insured. With respect to Plaintiff's application for supplemental security income, the ALJ concluded that Plaintiff "is not disabled under section 1614(a)(3)(A) of the Social Security Act." *Id.*

to rule upon facially valid objections to certain aspects of the vocational expert's testimony; and (3) the ALJ erred by failing to obtain an explanation for conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), pursuant to SSR 00-4p.[37] The Commissioner maintains that the decision to deny Plaintiff benefits is supported by substantial evidence and should be affirmed.[38]

## V. Analysis

### A. Substantial Evidence Supports the ALJ's RFC Determination

In his first assignment of error, Plaintiff alleges that the ALJ erred by failing to include any limitations in the RFC determination regarding Plaintiff's learning disabilities and general cognitive functioning.[39] Plaintiff asserts that upon order of the state agency, he was evaluated by Dr. James A. Van Hook, III., Ph.D., in January 2012 and was diagnosed with depressive disorder, pain disorder associated with psychological factors and a history of learning disabilities.[40] Plaintiff contends that with respect to learning disabilities and general cognitive functioning, Dr. Van Hook identified a significant level of impaired ability to read and comprehend what he was reading and found Plaintiff's concentration was poor for performing mental computations.[41] Dr. Van Hook also found that Plaintiff's ability to accurately recall items in sequence displayed a significant memory deficit/learning disorder.[42] Plaintiff argues that because a learning disorder is a lifetime condition, "the ALJ had no reasonable basis to exclude the effects of this impairment from his RFC finding."[43] Plaintiff contends that this error was not harmless because it resulted in the ALJ posing hypothetical questions to the vocational expert ("VE") that did not encompass all of the

---

[37] R. Doc. 14 at 4-17; R. Doc. 17 at 1.
[38] *See generally*, R. Doc. 16.
[39] R. Doc. 14 at 4.
[40] R. Doc. 14 at 4 (*citing* AR p. 499).
[41] R. Doc. 14 at 4 (*citing* AR p. 498).
[42] *Id.*
[43] R. Doc. 14 at 4 (citations omitted).

practical effects of all of Plaintiff's impairments. As such, Plaintiff asserts that the VE's responses to those questions do not constitute substantial evidence supporting the ALJ's decision to deny benefits.[44]

In opposition, the Commissioner primarily argues that contrary to Plaintiff's assertion, the ALJ did not err by failing to find Plaintiff's learning disability was a severe impairment at step two of the sequential analysis.[45] The Commissioner further asserts that the totality of the evidence shows normal functioning despite alleged and unsubstantiated lifelong cognitive and learning problems and that "Plaintiff has failed to point to any evidence other than consultative examiner Dr. Van Hook's one-time examination documenting Plaintiff's grossly exaggerated results to support his claim that the ALJ should have included limitations with respect to his ability to read, comprehend, and perform math."[46] Thus, the Commissioner argues that the medical evidence fails to show a severe mental impairment and fails to show any limitations pertaining to Plaintiff's mental RFC. The Commissioner claims that Plaintiff has failed to meet his burden of pointing to any medical evidence that supports his contention of a severe mental impairment and related mental limitations.[47]

## 1. The Medical Evidence of Record

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected.

---

[44] R. Doc. 14 at 5.
[45] R. Doc. 16 at 5-9. In the Reply, Plaintiff reiterates that his first assignment of error pertains to "the ALJ's failure to include limitations related to Plaintiff's lifetime learning disorder and cognitive deficits into his RFC finding." R. Doc. 17 at 1.
[46] R. Doc. 16 at 9.
[47] R. Doc. 16 at 10.

*Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ found that Plaintiff initially alleged that he was a 49-year old male with an eighth grade education and that asthma, a broken right leg, "pins and screws," and a back injury have prevented him from working since September 18, 2010.[48] In supplemental documents, Plaintiff alleged constant pain, a fear of falling in the shower, that he has to sleep sitting up in a rocking chair, and that he has contemplated suicide because of frustration and pain.[49] At the first administrative hearing held on October 17, 2012, Plaintiff testified that he completed the seventh grade, he was last employed at Capital Steel as a maintenance repairman and that he cannot work because he cannot sit up for long periods of time.[50] Plaintiff stated that he has two pins in his right ankle and that the ankle swells when he stands on his leg for long periods. Plaintiff testified that he lies down with his right leg elevated above heart level due to the swelling and inflammation in his ankle and that his ankle hurts all the time, but he does not wear compression socks.[51] Plaintiff claimed that he cannot work because he does not know of any job within his profession that he can

---

[48] AR p. 16 (*citing* AR pp. 316-22); *See*, AR pp. 313, 317-18.
[49] AR p. 16 (*citing* AR pp.346-350); *See*, AR p. 346, 348.
[50] AR pp. 69, 70, 72.
[51] AR pp. 72-73, 84.

do while sitting down and that he has difficulty reading.[52]  The ALJ noted that "the record does not contain any evidence to support the claimant's alleged illiteracy."[53]

Plaintiff further testified that he borrowed a friend's motorcycle and drove two hours to the hearing and that he was able to drive the motorcycle without significant pain because he was able to "take it slow and easy."[54]  Plaintiff stated that he lives alone in a mobile home, he can take care of his personal hygiene, and he uses a cane that was not prescribed by a doctor.[55]  Plaintiff testified that he cooks, does laundry, and washes dishes, but that he must sit down frequently while doing so.[56]  Plaintiff also testified that he has not received free medical care or emergency room treatment for his back pain, and Plaintiff's counsel confirmed that Plaintiff "has no medical evidence.  He hasn't been to a doctor in many years.  In fact, the CE appointments were his first doctor appointments in many years."[57]  Plaintiff further stated that he does not have any doctors, he has not received treatment for his back since before 2004 and that he has not received treatment for his ankle since the late 90s.[58]  Plaintiff confirmed that he still smokes despite his COPD and that he has no problems using his arms.[59]  When asked whether he has any mental health issues, such as problems with his memory or concentration, Plaintiff replied that he has "a little bit of memory lapse."[60]  Plaintiff further testified that he can sit for 15 or 20 minutes at a time, stand on his left leg for 20 or 30 minutes, walk a quarter of a mile and lift 20 pounds.[61]  Plaintiff denied that he has to lift more than 20 pounds while riding the motorcycle.[62]

---

[52] AR p. 73.
[53] AR p. 16.
[54] AR pp. 76-77, 81.
[55] AR pp. 77, 80.
[56] AR pp. 77-78, 80.
[57] AR pp. 78-79.
[58] AR p. 79.
[59] AR p. 81.
[60] AR p. 82.
[61] AR p. 82.
[62] AR pp. 82-83.

A review of the medical evidence shows that a consultative examination was performed by Dr. Adeboye Francis, M.D. on November 14, 2011.[63] Plaintiff's chief complaints included a broken leg, back problems and asthma, but Plaintiff also complained of shortness of breath, wheezing and lower back pain radiating down his legs to his knees.[64] Plaintiff also reported using "a simple cane not prescribed by physician" to shift weight off of his back and lower extremity, for walking, and for support during long walks.[65] Dr. Francis found Plaintiff had corrected and uncorrected visual acuity of 20/50 bilaterally, normal back curvature, restricted thoracic lumbar spine range of motion, antalgic gait, bony point tenderness at the lumbar spine levels and positive bilateral straight leg raising tests at 40-45 degrees. Plaintiff's neurological examination showed no atrophy, normal muscle tone and strength with good grasp and grip strength, and 2+ and asymmetrical deep tendon reflexes.[66] Dr. Francis found that a lumbosacral spine X-ray revealed anterior spurs at L1 through L5 vertebrae, mild degenerative joint disease, no subluxation and no acute fractures.[67] Dr. Francis also noted that a right ankle X-ray revealed post-surgical changes with screws in place, old healed tibia and fibula fractures, mild to moderate degenerative joint disease, with no acute fracture or dislocation noted. Dr. Francis' assessments and recommendations included COPD/emphysema, low back pain with radiculopathy and right leg pain.[68]

At the request of Social Security, Disability Determination Services, Dr. James Van Hook, III., Ph.D., performed a psychological consultative examination of the Plaintiff on January 11, 2012.[69] Plaintiff's chief complaints included a broken leg, back problems and asthma, but he also

---

[63] AR pp. 487-92.
[64] AR p. 489.
[65] AR p. 491.
[66] AR p. 491.
[67] AR p. 491.
[68] AR pp. 491-92.
[69] AR pp. 495-99.

reported an inability to walk without the use of a cane due to his back and leg pain. Dr. Van Hook noted that, "He reports having no other problems."[70] Plaintiff also reported a psychiatric history at East Louisiana State Mental Hospital "a long time ago," but stated that he does not know of his diagnosis.[71] Dr. Van Hook noted that Plaintiff was polite and cooperative throughout the examination, but he expressed frustration with the disability process, seemed resistant, and showed equivocal motivation and inconsistent persistence.[72] Dr. Van Hook found that the results of the examination "are likely a speciously low estimate of his cognitive functioning but a reasonable depiction of his current level of socioemotional/behavioral distress."[73] Dr. Van Hook found that Plaintiff's thinking was intact, logical and coherent and Plaintiff was oriented to person, place, time, and situation. However, Plaintiff's reading fluency and basic comprehension were impaired at the sixth grade level. Dr. Van Hook also found that Plaintiff's recent and long-term memory were adequate and Plaintiff's auditory sequential memory was very weak, but intact. Plaintiff's concentration was poor, but his pace was adequate. Plaintiff demonstrated poor math skills, marginal persistence, and marginal to poor level of social judgment and adaptive skills.[74]

Dr. Van Hook assessed Plaintiff with depressive disorder not otherwise specified (ruling out major depression), anxiety disorder not otherwise specified, pain disorder associated with psychological factors and a general medical condition and history of learning disabilities.[75] Dr. Van Hook found that Plaintiff is able to bathe and dress himself and his ability to understand, remember and carry out instructions was intact during the examination, but his ability to maintain attention/concentration for performance of simple repetitive tasks was not adequate and he showed

---

[70] AR p. 497.
[71] *Id*.
[72] AR pp. 497-98.
[73] AR p. 498.
[74] AR p. 498.
[75] AR p. 499.

memory problems. Dr. Van Hook found that Plaintiff's ability to respond appropriately to supervision and interact appropriately with others was seemingly adequate even though he showed marginal to poor social judgment when presented with interpersonal conflict.[76] Dr. Van Hook opined that Plaintiff's ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek is mildly impaired by his depression, anxiety and frustration and his ability to show adequate stress tolerance was believed to be mildly impaired due to lack of treatment. Dr. Van Hook found that Plaintiff's adaption per self-report was marginal to fair, Plaintiff showed "notable reading impairment," and he was not considered competent arithmetically to manage disability funds.[77]

Medical opinions were also provided from two non-examining state medical consultants in January and February 2012.[78] In a Psychiatric Review Technique assessment dated January 20, 2012, Dr. Cathy Castille, Ph.D., found that there was insufficient evidence to support Plaintiff's claim regarding mental impairments.[79] Dr. Castille concluded that, "Due to the clt's faking bad, inconsistencies, and report of activities that did not occur, there is insufficient evidence to evaluate clt's claims."[80] In a Physical Residual Functional Capacity Assessment dated February 15, 2012, Dr. Maria Pons, M.D., determined that Plaintiff was capable of performing a light level of work with frequent balancing and kneeling, occasional climbing, stooping, crouching, and crawling, and that Plaintiff's visual acuity represented only "a mild limitation."[81] Dr. Pons concluded that Plaintiff's vision is sufficient to perform work that requires occasional reading, but that jobs requiring very fine vision or prolonged visual work could be problematic.[82] In the RFC

---

[76] AR p. 499.
[77] AR p. 499.
[78] AR p. 18.
[79] AR p. 116.
[80] AR p. 117.
[81] AR pp. 119-20.
[82] AR p. 120.

assessment, Dr. Pons notes that Plaintiff's disability allegations include shortness of breath, degenerative disc disease, musculoskeletal issues regarding his gate and ability to walk with a cane, and right ankle fracture.[83]

The record also contains a May 14, 2012 physical RFC assessment by Dr. Anselmo Mamaril, M.D.[84] Dr. Mamaril found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday and his ability to push and/or pull was unlimited, other than as shown for lift and/or carry.[85] Dr. Mamaril explained that these limitations were due to Plaintiff having "DJD of the lumbar spine" and post-traumatic arthritis of the right ankle, further explaining that Plaintiff is capable of four hours of walking and standing out of an eight-hour workday.[86] Dr. Mamaril further found that Plaintiff could occasionally climb ramps/stairs, stoop and crawl, frequently balance, kneel and crouch, and could never climb a ladder/rope/scaffold, explaining that Plaintiff, "Has pain in the back and in the right ankle from the arthritis."[87] Dr. Mamaril concluded that Plaintiff had no manipulative limitations, such as reaching, visual limitations or communicative limitations, but that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation due to his COPD/asthma.[88] Dr. Mamaril also found that Plaintiff should avoid all exposure to hazards (machinery, heights, etc.) because Plaintiff demonstrated, "Poor risk for heights due to the DJD of the back and the right ankle."[89]

---

[83] AR p. 120.
[84] AR pp. 509-17.
[85] AR p. 511.
[86] AR p. 511.
[87] AR p. 512.
[88] AR pp. 513-14.
[89] AR p. 514.

Dr. Mamaril also addressed Plaintiff's credibility, noting that although Plaintiff reports pain in the back, he has no neurological dysfunction and X-rays of Plaintiff's lumbar spine showed only mild arthritis.[90] Dr. Mamaril found that in a November 21, 2011 Function Report-Adult, Plaintiff stated that he does light indoor household chores, "rides the car" and shops, such that the extent of Plaintiff's pain as alleged "is partially credible."[91] In his Physical RFC Assessment, Dr. Mamaril diagnosed Plaintiff with "DJD, lumbar spine" and post traumatic arthritis of the right ankle, listing COPD/asthma under "other alleged impairments."[92]

The record also contains medical records from Dr. Corey Hall, who treated Plaintiff in August and December of 2014 for complaints of vision and hearing loss and pain in his legs and back.[93] According to the medical records, Plaintiff presented to Dr. Hall on August 12, 2014 complaining of hearing and vision loss, as well as lower back pain and right ankle pain from a fracture.[94] The medical records also show that Plaintiff reported that he "Has GED."[95] The physical examination showed normal eyes, nonspecific hearing abnormalities, normal lungs, nonspecific lumbar/lumbosacral spine abnormalities, nonspecific ankle abnormalities, and that Plaintiff was not oriented to time, place, and person.[96] Dr. Hall assessed Plaintiff with hearing loss, family history of diabetes mellitus and lumbago and advised Plaintiff to perform home range of motion exercises and to quit smoking.[97] Dr. Hall prescribed Plaintiff Neurontin 300 mg, Flexeril 10 mg and Mobic 15 mg, and referred Plaintiff to a gastroenterologist, an ophthalmologist, and an otolaryngologist.[98]

---

[90] AR p. 515.
[91] AR p. 515; *See*, AR pp. 338-45.
[92] AR p. 510.
[93] AR pp. 521, 531.
[94] AR p. 534.
[95] AR p. 534.
[96] AR pp. 535-36.
[97] AR p. 536.
[98] AR p. 537.

Plaintiff returned to Dr. Hall on August 26, 2014 to review his lab results.[99]  Although the results of Plaintiff's physical examination were the same, Dr. Hall assessed Plaintiff with hearing loss, hyperlipidemia, lumbago and lumbar radiculopathy.[100]  Dr. Hall discussed lifestyle modification with diet and exercise, again advised Plaintiff to quit smoking and advised Plaintiff to take Neurontin as directed.[101]  On September 3, 2014, Plaintiff was prescribed a cane upon request.[102]  Plaintiff returned to Dr. Hall on December 1, 2014, complaining of pain in his legs and back.[103]  Plaintiff's physical examination remained unchanged and Plaintiff was given an injection of Toradol.[104]

At the May 22, 2015 administrative hearing, the ALJ pointed out the two-year gap in Plaintiff's medical records from 2012 until August 2014.[105]  Plaintiff's counsel explained that the gap in treatment was due to Plaintiff's homelessness and lack of funds.[106]  At the hearing, Plaintiff again testified that he is disabled due to lower back pain, sciatic pain and ankle swelling.[107]  Plaintiff stated that he can sit for 10 to 20 minutes, stand for 15 to 20 minutes, walk less than a quarter of a mile and lift 10 to 15 pounds.[108]  Plaintiff testified that he does not use an inhaler for COPD and he has not gone to the emergency room for treatment, but he complained of shortness of breath.[109]  Plaintiff also testified that he does not read well enough to fill out a job application and that he has memory problems at times.[110]

---

[99] AR p. 531.
[100] AR pp. 531-32.
[101] AR p. 533.
[102] AR p. 530.
[103] AR pp. 521, 528.
[104] AR pp. 521-23, 528-30.
[105] AR p. 31
[106] AR p. 31.
[107] AR p. 35.
[108] AR pp. 35-36.
[109] AR pp. 37-38.
[110] AR pp. 41, 45-46.

Based on the foregoing, the ALJ determined that Plaintiff has the RFC to perform light work with the following nonexertional limitations:

> frequent balancing and kneeling, occasional climbing of ramps and stairs, stooping and crawling, no climbing of ladders, ropes, or scaffolds, the claimant must be allowed the use of a cane for ambulation and to elevate right leg on foot stool when seated, avoidance of concentrated exposure to pulmonary irritants and all exposure to hazards such as moving machinery and unprotected heights, and no jobs requiring very fine vision or prolonged visual work.[111]

The ALJ's RFC determination is supported by substantial evidence in the record, as it is contains the same nonexertional limitations as those contained in the physical RFC assessments performed by Dr. Pons on February 15, 2012[112] and by Dr. Mamaril on May 14, 2012.[113]  Plaintiff has not pointed to any objective medical evidence in the record that contradicts the ALJ's RFC determination.

### 2. The ALJ Did Not Commit Reversible Error By Failing to Include Limitations in the RFC Determination Regarding Plaintiff's Alleged Learning Disabilities

The ALJ also did not err by failing to include any limitations in the RFC determination specifically related to Plaintiff's alleged history of learning disabilities.  The ALJ found that although Plaintiff testified that he has "difficulty reading," there is no evidence in the record to support Plaintiff's "alleged illiteracy"[114] and Plaintiff showed only mild limitations in the first

---

[111] AR p. 15.
[112] AR pp. 118-20.
[113] AR pp. 509-17.
[114] AR p. 16; *See*, AR p. 73.

three functional areas[115] and no episodes of decompensation.[116]  A review of the medical evidence supports the ALJ's findings, as Plaintiff has not provided any objective medical evidence regarding his alleged history of learning disabilities.  Although Dr. Van Hook found that Plaintiff's reading fluency and basic comprehension was "impaired at the sixth grade level"[117] and assessed Plaintiff with, among other things, "History of Learning Disabilities,"[118] Dr. Van Hook does not opine that Plaintiff's ability to work is impaired by his alleged learning disability.  Instead, Dr. Van Hook found that Plaintiff's "ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek is thought mildly impaired by his depression, anxiety, and frustration."[119]  Dr. Van Hook also found that Plaintiff's motivation during the physical examination was "equivocal" and that, "The results of the examination are likely a speciously low estimate of his cognitive functioning . . . ."[120]  Dr. Van Hook also noted "probable suboptimal effort."[121]  Dr. Castille, a state medical consultant, further found insufficient evidence to support Plaintiff's claims of mental impairments due to Plaintiff's "faking bad, inconsistencies, and report of activities that did not occur . . ."[122]

---

[115] At the time of the ALJ's decision, the Code of Federal Regulations provided that the severity of a mental impairment is measured according to the functional limitations imposed by the impairment and that, "We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(C).  In January 2017, the criteria of Paragraph B was revised to include the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b) (eff. Jan. 17, 2017).

[116] AR p. 15.  Because the ALJ did not find Plaintiff's mental limitations to be severe, it was not error to exclude any restrictions for Plaintiff's alleged learning disabilities from the RFC.  *See*, *Herring v. Astrue*, 788 F.Supp.2d 513, 519 (N.D. Tex. 2011) (district court concluded that an ALJ's RFC determination need not specifically include mental limitations when there was no evidence that the limitations would affect the plaintiff's ability to work); *Jones v. Colvin*, Civ. A. No. H-14-1249, 2016 WL 861334, at *10 (S.D. Tex. Jan. 28, 2016), *report and recommendation adopted*, CV H-14-1249, 2016 WL 659113 (S.D. Tex. Feb. 17, 2016) ("Here, the ALJ considered Plaintiff's depression, found that Plaintiff experienced only moderate restrictions, and did not include any mental limitations in Plaintiff's RFC.  The court finds that the ALJ committed no error in making this determination.").

[117] AR p. 498.

[118] AR p. 499.

[119] AR p. 499.

[120] AR pp. 498-99.

[121] AR p. 499.

[122] AR p. 117.

The ALJ's decision not to include any limitations in the RFC determination pertaining to Plaintiff's alleged learning disabilities is also supported by Plaintiff's medical records and the remainder of the medical opinion evidence.  The medical records from Plaintiff's three visits to Dr. Hall in 2014, which are the most recent (and only) medical records provided, show that Plaintiff reported that he has his GED.[123]  The medical opinion evidence also shows that Plaintiff's chief complaints only concerned his allegations of pain in his lower back and right ankle, as well as hearing and vision loss.[124]  Thus, while Plaintiff testified at the May 22, 2015 administrative hearing that he does not read well enough to fill out a job application and "not enough to remember – I can remember the jobs, but I cannot spell them all the way," it does not appear that he ever raised this issue to Dr. Hall, Dr. Van Hook or Dr. Francis, the physicians who actually treated and/or examined Plaintiff.  In a Function Report-Adult, dated November 21, 2011, Plaintiff stated that his illnesses, injuries or conditions limit his ability to work because he, "cannot walk for long periods of time, the muscles in the lower part of my back tightens and stiffens up enables [sic] me to lift very much, my right leg swells up from my knee to my toes due to poor circulation.  I have to use a cane to walk and the pain is excruciating."[125]  Thus, as the ALJ pointed out, "The claimant indicated in written reports that his activities of daily living are limited due to physical impairments rather than mental impairments."[126]

---

[123] AR pp. 521, 528, 531, 534.

[124] The Court also notes that despite Plaintiff's claims that he suffers from lifelong learning disabilities, Plaintiff was previously employed as a maintenance repairman.  AR p. 16.  By Plaintiff's own testimony, his physical rather than mental limitations caused him to be laid off from his job as a repairman.  AR p. 44-51 ("I can't go out there and pick up a head off an engine block or I can't pull a transmission and set it up on the dolly to be moved from that prescribed location, up under the cars.  So they don't want – they – if you can't lift nothing, they don't want you.").  As noted by the ALJ, Plaintiff was "able to work with earnings above the substantial gainful activity level for years and his job ended due to a layoff rather than due to impairments."  AR p. 14.

[125] AR p. 338.

[126] AR p. 14 (*citing* AR pp. 338-45).

In arguing that the ALJ erred by failing to include any limitations in the RFC determination regarding his alleged learning disabilities, Plaintiff is essentially asking this Court to reweigh the evidence of record. However, the case law is clear that in applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the ALJ to decide and in the instant case, the ALJ resolved such conflicts in favor of finding that Plaintiff's ability to work is not limited by his alleged learning disabilities. As shown above, the ALJ's RFC determination is supported by substantial evidence and the ALJ did not commit reversible error by failing to include limitations regarding Plaintiff's alleged learning disabilities.

## B. The ALJ's Alleged Failure to Rule Upon Post-Hearing Objections to the Vocational Expert's Testimony

In his second assignment of error, Plaintiff alleges that the ALJ erred by failing to rule on the objections raised in a post-hearing brief regarding the testimony of the VE in violation of the *Hearings, Appeals and Litigation Law Manual* ("HALLEX") Section I-2-5-55 (2015), which is an internal manual used by ALJ's and the Appeals Council. Plaintiff claims that after the May 22, 2015 administrative hearing, his counsel filed a "Memorandum and Objections to the Vocational Witness's Testimony," which: (1) challenged that the vocational testimony did not meet the ALJ's burden at step five of the sequential analysis to demonstrate that there are a "significant number of jobs" available in light of the restrictions set forth in the hypothetical question that matched the ALJ's ultimate RFC determination; (2) challenged the VE's reliance upon a non-peer-reviewed software program, the reliability of which the SSA has not taken administrative notice of, to determine job incidence data; and (3) objected to the jobs named by the VE as fitting the ALJ's

hypothetical assumption, given up-to-date and reliable information obtained from the United States Department of Labor.[127] Plaintiff asserts that because the ALJ failed to fulfill his clear obligation to obtain an explanation from the VE or a vocational resource regarding the issues raised in his post-hearing brief, the record in this case is not amenable to meaningful judicial review.

"The Social Security hearing procedures do not specifically provide for a post-hearing brief." *Carter v. U.S. Commissioner of Soc. Sec.*, 1:15-CV-02850, 2017 WL 1304428, at *6 (W.D. La. Feb. 27, 2017), *report and recommendation adopted*, 1:15-CV-02850, 2017 WL 1332722 (W.D. La. Apr. 4, 2017); *See,* 20 C.F.R. §§ 404.944, *et seq.* The record reflects that Plaintiff's counsel submitted a Supplemental Pre-Hearing Memorandum dated May 20, 2015, in which counsel requested that the record remain open for 30 days after the administrative hearing, "to respond, particularly to any vocational witness testimony, should we find it in the claimant's best interest to do so."[128] However, during the May 22, 2015 administrative hearing, Plaintiff's counsel did not re-urge his request that the record remain open after the hearing for the submission of post-hearing briefs.[129] Thus, no time was allotted for Plaintiff's counsel to file a post-hearing brief and the ALJ closed the hearing.[130] Nonetheless, Plaintiff's counsel submitted a Post-Hearing Memorandum & Objections to the Vocational Witness Testimony dated June 5, 2015, which was filed into the administrative record.[131] The ALJ's decision is dated September 25, 2015 and mentions that, "The claimant's counsel submitted a post-hearing brief post-hearing [sic]. That

---

[127] R. Doc. 14 at 5-6.
[128] AR p. 597.
[129] AR pp. 26-65.
[130] *See*, AR p. 65.
[131] AR pp. 399-407. Neither the Code of Federal Regulations nor HALLEX specifically provide for post-hearing briefs, although they do provide for pre-hearing briefs. *Carter*, 2017 WL 1304428, at *6, n.1 (*citing* 20 C.F.R. § 404.949, 416.1449; HALLEX I-2-6-76, "Arguments by the Claimant or Appointed Representative," 1993 WL 751903 (updated 10/14/16)).

evidence was admitted into the record without objection or comment as Exhibit 23F."[132]  The ALJ

makes no other mention of Plaintiff's post-hearing objections in the decision.

### 1. Any Error at Step Five of the Sequential Analysis Was Harmless

#### a. The VE's Testimony Is Reliable With Respect to the Number of Jobs Available in the Local and National Economy For Someone With Plaintiff's RFC

To the extent that Plaintiff contends the ALJ erred by failing to address the objections

raised in his post-hearing brief, any such error was harmless.  *See, Carter*, 2017 WL 1304428, at

*6-7 (without addressing whether the ALJ erred by failing to rule on social security claimant's

objections to the VE's testimony, the court concluded that claimant had not shown any prejudice

arising from the fact that the ALJ did not specifically address the objections raised in a post-hearing

brief).  During the administrative hearing, the ALJ posed five hypothetical questions to the VE,

four of which involved the assumption of an individual with Plaintiff's RFC, who can perform

light work with frequent balancing and kneeling, occasional climbing of ramps and stairs,

occasional stooping and crawling, no climbing of ladders, ropes, or scaffolds, no jobs requiring

very fine vision or prolonged visual work, avoiding concentrated exposure to pulmonary irritants

and all exposure to hazards, such as moving machinery and unprotected heights, and allowing the

individual the use a cane to ambulate and to elevate his right leg on a footstool when seated.[133]

The VE testified that an individual with those limitations would be able to perform the

requirements of unskilled, light exertional jobs, such as: (1) Hand Packager (DOT No. 559.687-

074) with 1,900 jobs in Louisiana and 320,624 jobs nationwide; (2) General Clerk (DOT No.

209.667-014), with 2,907 jobs in Louisiana and 230,636 jobs nationwide; and (3) Information

---

[132] AR p. 10.
[133] AR pp. 48-51.

Clerk (DOT No. 237.367-018), with 1,226 jobs in Louisiana and 85,664 jobs nationwide.[134] Under two of the hypotheticals, the VE testified that if Plaintiff was not limited by the use of a cane, he would also be able perform the job of Flagger (DOT No. 372.667-026), with 1,450 jobs in Louisiana and 260,680 jobs nationwide.[135]

In the post-hearing brief, Plaintiff objected to the VE's testimony that there are a significant number of Hand Packager, General Clerk, Flagger and Information Clerk positions within the national or regional economy because the VE's information came from SkillTRAN's Job Browser Pro, a data source whose reliability has not been administratively noticed and which has an unverifiable methodology that has not been subject to peer-review.[136] However, courts within this Circuit, including this Court, have rejected similar arguments regarding the reliability of SkillTRAN's Job Browser Pro. In a recent decision, this Court rejected a social security claimant's argument that a VE had provided unreliable testimony regarding the number of jobs available because the VE had "clearly identified" the Census Codes as the source of his information regarding the number of available positions, and "provided the number of available jobs for each specific 'DOT title' using 'Job Browser Pro.'" *Finley v. Colvin*, CV 14-430-SDD-RLB, 2015 WL 5162476, at *6 (M.D. La. Aug. 12, 2015), *report and recommendation adopted*, CV 14-430-SDD-RLB, 2015 WL 5162396 (M.D. La. Sept. 1, 2015). Another court in this Circuit similarly rejected a social security plaintiff's claim of unreliable methodology where the VE had testified that "she utilized a software she referred to as 'Job Browser Pro, SkillTRAN,'" to "make associations between the Dictionary of Occupational Titles (DOT) and the Occupational Employment Statistics which she agreed do not refer to specific jobs by DOT title." *Barlow v. Berryhill*, 2:15-CV-0180,

---

[134] AR pp. 48-51.
[135] AR pp. 49-50.
[136] AR pp. 401-02.

2017 WL 1157211, at *8 (N.D. Tex. Mar. 10, 2017), *report and recommendation adopted*, 2:15-CV-0180, 2017 WL 1157104 (N.D. Tex. Mar. 27, 2017). In doing so, the *Barlow* court concluded that, "plaintiff has failed to present this Court with evidence of . . . how the VE's vocational numbers were flawed or would have differed or been reduced below the substantial threshold required in social security law." *Id*.

Other courts have similarly rejected arguments regarding the reliability of vocational testimony that is based upon data from SkillTRAN's Job Browser Pro. In *Williams v. Commissioner of Social Security,* a district court in Ohio rejected a social security claimant's objections to the VE's reliance upon certain reference materials, explaining that, "While Plaintiff objects to the VE's use of reference programs such as Skilltran (Job Browser) and the Occupational Employment Quarterly, the excerpt Plaintiff referenced from the Vocational Expert Handbook, appears to encourage, and even require, VEs to familiarize themselves with and make use of these types of sources in rendering their opinions." 1:11-CV-2244, 2012 WL 7766360, at *11 (N.D. Ohio Oct. 31, 2012), *report and recommendation adopted*, 1:11 CV 2244, 2013 WL 1145049 (N.D. Ohio Mar. 18, 2013). In a district court case from Nevada, a social security claimant did not object to the qualifications or the expertise of the VE, but that the VE was not basing her testimony regarding the number of jobs available on her qualifications or her expertise, but on computer programs, including OccuBrowse and SkillTran. *Hawkins v. Colvin*, 3:13-CV-00299-MMD, 2014 WL 5529361, at *17 (D. Nev. Oct. 30, 2014). In rejecting the plaintiff's argument, the *Hawkins* court found that, "Plaintiff concedes that the computer programs identified by the VE rely on numbers from accepted sources, and the VE, in turn, relied on them" and that, "Plaintiff asserts no further argument to indicate that the VE's methods were unreliable." 2014 WL 5529361, at *19. The *Hawkins* court further held that, "[O]ther district courts have held that an

ALJ is entitled to rely on the VE's testimony regarding the number of jobs available in the economy." *Id.* (citing *Merryflorian v. Astrue*, No. 12–CV–2493–IEG (DHB), 2013 WL 4783069, at *6 (S.D. Cal. Sept. 6, 2013) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005))). In *Hancock v. Commissioner of Social Security*, a Florida district court reached a different conclusion, remanding the case based upon the ALJ's failure to rule upon post-hearing objections regarding the reliability of vocational testimony that was based upon data from SkillTRAN. *Hancock v. Commissioner of Soc. Sec.*, 6:15-CV-206-ORL-DNF, 2016 WL 4927642, at *3 (M.D. Fla. Sept. 16, 2016). The *Hancock* court distinguished other cases in which courts have upheld the use of software such as SkillTRAN, emphasizing that unlike in those cases, the VE had failed to explain why the data underlying SkillTRAN was reliable. *Id.*

Based on the foregoing case law, Plaintiff has failed to show that the VE's testimony regarding the number and type of occupations available to someone with Plaintiff's RFC is unreliable because it is based upon data from SkillTRAN's Job Browser Pro. Although not addressed by the Plaintiff, the VE testified several times at the May 22, 2015 hearing that her testimony regarding the number of jobs available to someone with Plaintiff's RFC is from "the Job Browser Pro System, which is Skill Tran, which takes it from the <u>Dictionary of Occupational Titles</u> and . . . various other resources, based on the DOT."[137] Upon questioning by the ALJ, the VE repeatedly confirmed that her responses are consistent with DOT and her experiences.[138] As such, the VE clearly testified that the information she relied upon, which she obtained from SkillTRAN's Job Browser Pro, is based upon data from the DOT. Plaintiff has failed to show that such data is unreliable.

---

[137] AR pp. 57-58.
[138] AR pp. 52, 63.

### b. The Jobs the VE Testified That an Individual with Plaintiff's RFC Can Perform Do Not Have Job Duties that Exceed the Scope of Plaintiff's RFC

In the post-hearing brief, Plaintiff also objects to the VE's testimony that Plaintiff could perform the duties of a Hand Packager, General Clerk and Information Clerk because while these jobs used to be unskilled positions within the ambit of the ALJ's RFC determination, up-to-date information available at the United States Department of Labor's website shows that the jobs have changed and are now semiskilled or even skilled jobs that Plaintiff could not perform due to his learning disability/cognitive impairments.[139] As an initial matter, the undersigned has already determined that the ALJ's RFC determination is supported by substantial evidence of record and that the ALJ did not err by failing to include limitations for Plaintiff's alleged learning disabilities. Thus, to the extent Plaintiff objects to the vocational testimony on the basis that Plaintiff cannot perform the job duties of Hand Packager, General Clerk or Information Clerk due to the limitations imposed by his learning disability/cognitive impairments, this argument is unpersuasive.

Plaintiff also appears to object to the VE's testimony that someone with Plaintiff's RFC can perform the jobs of Hand Packager, General Clerk and Information Clerk because the VE relied upon information from the DOT, which classifies these jobs as unskilled work, and the DOT "is an obsolete and stale database."[140] According to Plaintiff, the Department of Labor's current tool in assessing job requirements is the Occupational Information Network ("O*NET"), which links DOT codes with Standard Occupational Classification ("SOC") codes, which Plaintiff contends, "give ranges of the SVP level for the DOT Codes as they are performed in the current

---

[139] R. Doc. 14 at 7-8; *See*, AR pp. 403-404. To the extent that Plaintiff raises the same argument with respect to the jobs of Surveillance-System Monitor and Call-Out Operator, the two jobs that the VE testified an individual could perform under the hypothetical posed by Plaintiff's counsel during the hearing, that argument also lacks merit. The hypothetical question posed by Plaintiff's counsel included additional limitations not included in the ALJ's RFC determination, including an individual who "could only stand and walk for two hours out of an eight hour workday." R. Doc. 14 at 7-8. Because the ALJ's RFC determination is supported by substantial evidence, the VE's testimony regarding these two positions is not relevant to the issues currently before the Court.

[140] AR p. 403.

world of work."[141]  Plaintiff asserts that each of the foregoing jobs "is now an SVP 4 < 6 . . .

making this [sic] job semiskilled to skilled work," which exceed Plaintiff's capabilities.[142]

Plaintiff's argument on this issue also lacks merit.  As acknowledged by Plaintiff in his post-

hearing brief,[143] 20 C.F.R. § 404.1566(d) specifically provides the following:

> (d) Administrative notice of job data.  When we determine that
> unskilled, sedentary, light, and medium jobs exist in the national
> economy (in significant numbers either in the region where you live
> or in several regions of the country), we will take administrative
> notice of reliable job information available from various
> governmental and other publications.  For example, we will take
> notice of—
> (1) Dictionary of Occupational Titles, published by the Department
> of Labor;
> (2) County Business Patterns, published by the Bureau of the
> Census;
> (3) Census Reports, also published by the Bureau of the Census;
> (4) Occupational Analyses, prepared for the Social Security
> Administration by various State employment agencies; and
> (5) Occupational Outlook Handbook, published by the Bureau of
> Labor Statistics.

20 C.F.R. § 404.1566(d).  Thus, the VE did not err by basing her testimony upon information

obtained from the DOT.  For the same reason, Plaintiff's objection that the VE's testimony is

inconsistent with the DOT because the *Selected Characteristics of Occupations Defined in the*

*Revised Dictionary of Occupational Titles*, a companion volume to DOT, states that the positions

of Hand Packager and General Clerk require frequent or constant near acuity, which exceed the

nonexertional limitations in Plaintiff's RFC determination, also lacks merit.[144]

To the extent that Plaintiff objected to the VE's testimony that someone with Plaintiff's

RFC and a sit/stand limitation can perform the jobs of Hand Packager, General Clerk, Information

---

[141] *Id.*
[142] AR p. 404.
[143] AR p. 401.
[144] AR p. 405.

Clerk, Surveillance-System Monitor and Call-Out Operator because the testimony was based upon the VE's own experience rather than the DOT, Plaintiff's objection is unsupportable. This Court recently rejected that argument in *Finley v. Colvin*, explaining that the Fifth Circuit has advised that:

> [T]he DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job. The value of a vocational expert is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed . . . . [T]his Court has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job.

CV 14-430-SDD-RLB, 2015 WL 5162476, at *1 (M.D. La. Aug. 12, 2015), *report and recommendation adopted*, CV 14-430-SDD-RLB, 2015 WL 5162396 (M.D. La. Sept. 1, 2015) (quoting *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)). Thus, the ALJ was entitled to rely upon the VE's testimony that was based upon her own experience.

Based on the foregoing, even to the extent the ALJ may have erred by not addressing Plaintiff's written objections to the VE's testimony raised in Plaintiff's post-hearing brief, the error was harmless.

### C. Plaintiff Has Not Shown That the VE's Testimony Conflicts With the DOT

In his third and final assignment of error, Plaintiff asserts that the ALJ committed reversible error by failing to obtain an explanation from the VE as to why her testimony regarding the jobs available for someone with Plaintiff's RFC conflicts with the job descriptions contained in the DOT. The VE testified that someone with Plaintiff's RFC, who requires the use of a cane to ambulate, can perform the jobs of Hand Packager, General Clerk and Information Clerk. However, Plaintiff claims the DOT describes each of those jobs as having "significant hand use requirements

(*i.e.*, for reaching, handling, carrying, and fingering)."[145]   As the Commissioner points out, however, Plaintiff did not question the VE about this alleged conflict during the hearing.  It is well settled in the Fifth Circuit that, "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000).  Thus, Plaintiff waived this argument by not raising the issue during the administrative hearing.

Moreover, even if the argument had not been waived, Plaintiff has not shown that there is an actual conflict, direct or implied, between the VE's testimony and the DOT.  While Plaintiff cites several Uniform Resource Locaters ("URLs") in support of his position that such a conflict exists, these URL's are no longer accessible.[146]  Further, the ALJ determined that Plaintiff has the RFC to perform light work with certain nonexertional limitations, including the need to use a cane to ambulate.[147]  The ALJ did not include any nonexertional limitations for reaching, handling, carrying and fingering.  During the administrative hearing, the VE specifically testified that someone with Plaintiff's RFC and the limitation requiring the use of a cane to ambulate could still perform the jobs of Hand Packager, General Clerk and Information Clerk.[148]  The VE also repeatedly testified that her testimony is consistent with the DOT and her experience.[149]  Plaintiff has not presented any evidence to contradict the VE's testimony that her statements are consistent with, and based upon, the DOT.  Because Plaintiff has failed to show that the vocational testimony

---

[145] R. Doc. 14 at 14.
[146] R. Doc. 14 at 15.
[147] AR p. 15.
[148] AR p. 50.
[149] AR pp. 52, 63.

conflicts with the DOT, Plaintiff has not shown that the ALJ committed reversible error by failing to obtain an explanation from the VE regarding why her testimony conflicted with the DOT.

## VI. Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the application for disability insurance benefits and the application for supplemental security income filed by plaintiff, Dennis S. James, is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on September 21, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**